Good morning, Your Honors. My name is Nancy Miller, and I represent Marie Andaya, the petitioner in this matter. Excuse me. Ms. Andaya entered the United States on a visitor's visa in 1996. She thereafter, almost immediately, and while she was in status, applied for and received a change of status to a non-immigrant religious worker visa. And she kept that until 1992, which was the five-year statutory period at which she could no longer extend that visa, for she didn't know that at the time. She also, through her attorney, for whom she also had applied for the R1, applied for special immigrant status, which would have allowed her, if she'd been eligible for it, to apply and receive a green card, which would have allowed her to stay permanently in the United States. She thought all of that was, well, she thought that the 360, the special immigrant visa, was pending, and while she had received the denial of the second extension of the R1, she was told by her lawyer that he would appeal, which he did, and that she had 15 months with which she could stay in the United States while that R1 appeal was pending. And as I said, she also believed that she had the application for a green card pending and that she could stay in the United States. She learned that all of this was incorrect in May of 1990 – May of 2003, excuse me, when she was taken into custody by immigration, by DHS. Her first master hearing was in June of 2003, which was a month after the NTA was issued, which was, again, a month after she'd realized and learned that she could not stay in the United States while an R1 appeal was pending and that she wasn't eligible for an R1 appeal or extension and that her application for a green card had been denied. So, Counsel, what is your argument that a reliance on erroneous advice of counsel equals extraordinary circumstances that excuses the delay in filing? Well, if it is a reasonable reliance, yes, Your Honor, it is, that she's not an attorney. The information that she received seemed reasonable to her. Her attorney had previously gotten her the status that she had sought. So to rely on the fact that he was correct was reasonable on her behalf. She had no way of knowing otherwise. And she thought – All right. So assuming she thought she had 15 months, she waited almost two years. She thought – So what explains the gap between the 15 months and the two years? First of all, she thought she had 15 months on the R1, but she also thought that she had a pending application for a green card, and she thought that that was still pending. So if she'd received the green card through the 360, through the special immigrant religious worker, she would not have been facing return to the Philippines at all. In addition, when she found out that the information that she had received was incorrect, she was immediately placed into proceedings. At the time that she was placed into proceedings, she could no longer affirmatively file for asylum at the asylum office. She had to do that in court. She notified the judge at the first master hearing, which was in June of 2003, that she intended to apply for asylum, and the judge gave her the date of January 22, 2004, to apply. I think it's reasonable to assume or to ascribe the June of 2003 date to her application for her green – for asylum, because that's when she told the judge, and she couldn't apply any other place. All right, but don't the regulations give a six-month period after the expiration of status? They do, Your Honor, and I don't believe that that six-month limitation is valid. I think that that – Didn't we just hold it was valid in a case called Husev recently? With all due respect, Your Honor, I think that that issue should be revisited. But you do – are you aware of that case? Yes. Okay. So you think the case was wrongly decided? Well, I do think that the case was wrongly decided, Your Honor. Well, it didn't actually foreclose your argument, but I think – I mean, I think that the reg says six months is reasonable and shorter periods of time will be considered by – I mean, case by case. But there – and there is a list of reasons in the regs. Yes, there are. Which is explicitly non-exhaustive. Yes. Did you follow the requirements that are set out in the regulations for making the ineffective assistance of counsel argument? We did not, but I think under Lowe we don't have to, Your Honor. Well, the Lozado case says you have to do something. She filed her declaration that very clearly stated what she had believed, why she believed that that was reasonable, and that was part of her application. The fact that she did not go any farther than that, as I said, I don't think is necessary when it is very clear that the information that she received was erroneous. She – the denials of the R1 second application for the extension and the denial of the 360 clearly showed that she was not able to get that second extension because she had – she had reached the five-year limitation and that she was therefore also ineligible for the 360. When it is that clear, my reading of Lowe says that it's not required to go any farther than that. And again, coming back to whether or not she was reasonable in assuming that she was in status, which is the other requirement or one of the other exceptions in the regulations, she was reasonable in assuming that she had – that she was still in a – for a green card and that she didn't need to worry about going home because she was going to be getting a green card and wasn't facing having to leave the United States. Do you want to reserve the remainder of your time? Yes, please. Thank you. Good morning, Your Honors. May it please the Court, Timothy Hayes on behalf of the Attorney General. I would like to direct the Court's attention to page 110 of the administrative record. On that page, it includes testimony from Ms. Andaya, and she says that her first attorney told her that she needed to leave the country because her R1 visa expired and that they wouldn't extend it unless she left the country for a year and then reentered. She didn't leave because she then went to another lawyer who her father knew through a friend of his, and that lawyer told her that she might be able to stay for 15 months, non-lawful status. The immigration judge's point is if she truly feared returning to the Philippines, she knew that her status was in jeopardy at that point when the first attorney told her that something was wrong and she should have filed then, but she waited 21 months from that point to file for asylum. And then as a broader issue, we do concede that the Court has jurisdiction. I do know that our brief said, but that was before HUSIF. Right. As for the withholding of removal application, the record does not compel the conclusion that Ms. Andaya established a clear probability that she would be persecuted if she returned to the Philippines. Did the IJ reach that question? Yes. Okay. Yeah, it's in the back half of her opinion. All right. So he didn't rely solely on the one-year bar? Well, withholding doesn't have the one-year bar. Oh, withholding. Yeah, I'm talking about withholding. Withholding. Okay, we moved from. All right. Right, right. He didn't reach asylum, though. No. If the Court were to find that reasonable, the record, well, first off, the standard for review for a reasonable circumstances question in this circuit is substantial evidence. So the Court would have to find that the record compels the conclusion that Ms. Andaya proffered a reasonable explanation for a failure to file within one-year of entering into this country. Well, plus six months. Well, right. Right. But the whole thing is a substantial evidence sort of review. It's a mixed question of factor law, and it's reviewed under substantial evidence. If the Court does find that, then it would have to go back because there were no findings made under the reasonable possibility standard. But they did reach the separate issue of withholding and removal, and that has no bar to review. And in this case, the immigration judge reasonably concluded that Ms. Andaya being heckled about 20 times while she performed missionary work with her father and her brothers of pasture in the Philippines between the years of 1991 and 1996, while offensive and harmful, did not rise to the level of persecution. And that is correct under this Court's case law. And now Glucu v. INS, the Court said that the police interfering with worship, including punishing and shoving parishioners, threatening the petitioner with an anonymous death threat, and firing the petitioner, having an employer fire her, did not rise to the level of persecution. The Court described that as harassment, discrimination, and a horrible circumstance, but not enough to rise to the level of persecution. As far as an independent finding of future persecution, Ms. Andaya has identified no specific threat against her. Can we go back to this time limitation? Sure. The list is non-exhaustive. Right, Your Honor. And then she had six months after the expiration of her legal status. Well, that's the preamble. The actual regulation I don't think says six months, but the preamble does. Right, right. And this Court reads it as a presumptive guideline. Presumptive guideline of reasonableness is six months. So wasn't the I.J. wrong when he said that when he made this comment that if the respondent were too fearful of returning to the Philippines, she should have filed for asylum no later than March 1, 2002, when her status as a religious worker expired? Isn't that incorrect? I mean, if you go by reading the regulations. If you read it in isolation without the surrounding sentences, that would be incorrect because you can't do an absolute bar. The Court requires an individualized determination. But I think that was done here because if you continue reading, she goes, the immigration judge goes, Waiting six months or longer after expiration of status or termination is not considered reasonable. But then she goes, in other words, Respondent waited almost two years not quite to apply for asylum. Even if some attorney had told her she could remain legally in the United States for a period of 15 months, that does not explain why she would wait two years to apply for asylum. So your position is essentially that reasonableness inquiry was done implicitly. Right. Exactly, Your Honor. And are we reviewing the I.J. or the BIA opinion in this case? You're reviewing the I.J. with a supplemental review over the BIA's comments. The BIA adopted and affirmed the immigration judge under Urbano. Any other questions? Does anyone have any? No. Okay. Thank you, Your Honors. You have seven minutes left on time. With all due respect to government counsel, I do believe that the immigration judge made a specific limitation of six months. I think that when she began her decision, she said that the regulations that the procedure for asylum is set out in 65 Federal Regulations 76123 and 124 and said specifically that it requires that it be filed within six months. When she then discussed how long Ms. Andaya took to file, it was within the context of the fact that she had found that six months was per se the time deadline. And I think she was clearly wrong. Don't you think if she hadn't made the error that you ascribed to her, she would have found that the 15 months itself was unreasonable? Isn't that clear from the sentences that follow the one you quoted? I don't know whether she would have or not. Perhaps her analysis would have been different if she weren't starting from the premise that six months was the cutoff period. If she were looking at the entire picture of what is reasonable under the circumstances, and under the circumstances means taking all of the facts into account, I think she might very well have reached a different decision. Thank you, Your Honors. All right. Thank you very much. Andaya v. Holder will be submitted.
judges: Cogan, Goodwin, Wardlaw